UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**FIKERTE KASSIM,**                 )
                                    )
    **Plaintiff,**            )
                                    )
    v.                       )    Civil Action No. 12-01663 (ESH)
                                    )
**INTER-CONTINENTAL HOTELS**        )
**CORPORATION,**                    )
                                    )
    **Defendant.**            )
_____ )

## **MEMORANDUM OPINION**

Plaintiff Fikerte Kassim has sued Inter-Continental Hotels Corporation ("Hotel") alleging that she was fired because of her sex in violation of the D.C. Human Rights Act ("DCHRA").[1] D.C Code § 2-1401, *et seq*. Presently before the Court is defendant's Motion for Summary Judgment (Sept. 13, 2013 [ECF No. 17] ("Def.'s Mot.").)  For the reasons stated below, this motion will be granted.

## **FACTUAL BACKGROUND**

On March 7, 2012, defendant fired plaintiff from her position as a bartender at the Willard Inter-Continental Hotel where she had worked for the prior eighteen years. (*See* Pltf's Dep. Tr. ("Pl. Dep.") at 23-29; Def.'s Appendix ("App.") Tab 9—Decl. of Kim Allen-Mills ("Mills Decl.") at ¶ 7.)  Plaintiff's termination came several days after members of a "high-

---

[1] Plaintiff's initial complaint alleged discrimination on the basis of race, color, sex, and national origin. However, at this point, only her sex discrimination claim remains.  (*See* Pl.'s Opp. to Def.'s Mot. for Summ. J. [ECF No. 19] ("Pl.'s Opp.") at 4 n.2.)

1

profile" group complained to Hotel management that plaintiff rudely took their orders, glared at them while they were at the bar on two different occasions, generated an inaccurate bill, and was argumentative when asked to correct her mistake. (*See* Mills Decl. at ¶¶ 16-23.)

Following these incidents, defendant suspended plaintiff pending investigation. (*See id.*) Suspension is one of several disciplinary actions that the Hotel is permitted to take under its Disciplinary Action Policy contained in its Code of Conduct. (Def.'s App. Tab 10—Disciplinary Action Policy ("Policy").) Potential disciplinary actions include warnings (written and verbal), suspension, and termination. (*See id.*; Def.'s App. Tab 11—Dep. of Kim Allen Mills ("Mills Dep.") at 16-19.)[2] In general, the Hotel uses what it refers to as a "progressive discipline system" whereby employees move "from one level of discipline to the next." (Def.'s App. Tab 2—Professional Code of Conduct ("Code") at 35.) In this system, employees are first issued a series of warnings (verbal warning, first written warning, second written warning, final written warning), and, if necessary, they can then be suspended or their employment can be terminated. (Mills Dep. at 16-19.) For purposes of this "progressive discipline system," a disciplinary incident remains "active" for one year (though records of all incidents remain in an employee's personnel files indefinitely).[3] (*See* Policy at 2.)

---

[2] The parties disagree on the specifics of the Hotel's disciplinary system. Plaintiff identifies seven different disciplinary actions that may be taken prior to termination based on both the text of the Policy, as well as the specific disciplinary actions taken in this case. (*See* Pl.'s Responses to Def.'s Stat. of Undisputed Facts ("Pl. Response") at 6.) Defendant on the other hand focuses on the four categories of discipline in the Policy: verbal warning, written warning, final written warning with suspension, and termination. (*See* Def.'s Stat. of Undisputed Facts ("Def.'s Stat.") at ¶ 12.) This dispute presents a distinction without a difference and is of no consequence to the Court's analysis.

[3] For example, if an employee was issued a "First Written Warning" on January 1, 2013 and then does not commit another disciplinary infraction until January 2, 2014, the employee would receive another "First Written Warning," as opposed to a "Second Written Warning."

The Hotel is, however, not required to move sequentially through the steps outlined in the "progressive disciplinary system." (Code at 35; Mills Dep. at 19.) To the contrary, "depending on the severity of the problem, the type of behavior or misconduct, the number of occurrences, etc. the Hotel may apply any level or type of discipline it deems appropriate." (Code at 35.) In fact, the record in this case reflects that it is not uncommon for employees to receive more severe disciplinary penalties (including suspension) even for a first offense.[4] (*See, e.g.*, Def.'s App. Tab 19—"Hewes Disciplinary Record" ("Hewes Record") at 6 (an example of a final written warning and suspension based on a single active offense).)

During plaintiff's suspension, her direct supervisor (Mr. Patrick Berwald) and the Hotel's Director of Human Resources (Ms. Kim Allen-Mills) reviewed the complaints made by the high-profile group as well as the three other "active" incidents in plaintiff's disciplinary record.[5] (*See* Mills Decl. at ¶ 20.) In August 2011, the Hotel issued plaintiff a "Second Written Warning" based on an unsatisfactory "mystery shopper" evaluation.[6] (Def.'s App. Tab 5—Personnel

---

[4] The policy states that "[m]anagement reserves the right to administer first offense terminations where circumstances require . . . ." (*See* Policy at 2.)

[5] Defendant relied on two additional disciplinary actions prior to 2011 in its initial Motion. However, as plaintiff correctly points out, these disciplinary actions were not "active" at the time of her suspension and therefore according to the Policy (and the testimony of her supervisors), they played no role in the decision to terminate her employment. Plaintiff further argues that defendant's supervisors did not review the two disciplinary actions from August 2011. Plaintiff seemingly bases this view on defendant's statement that "Ms. Mills and Mr. Berwald reviewed the most recent complaints . . . as well as Plaintiff's pattern of guest service complaints and discipline which had occurred during the previous *6 months.*" (*See* Def.'s Stat. at ¶ 49 (emphasis added).) However, as defendant correctly points out, the August disciplinary actions were "active" under the terms of the Policy because they occurred less than one year before plaintiff's suspension. Moreover, according to the deposition of Kim Allen-Mills, she and Mr. Berwald reviewed "the fact that [plaintiff] ha[d] been progressively disciplined *over the past six or seven months*." (*See* Mills Dep. at 16 (emphasis added).) This indicates that plaintiff's supervisors not only were permitted to review the August 2011 disciplinary actions but actually did so prior to firing plaintiff.

[6] The Hotel contracts a third-party named Unifocus to provide "mystery shoppers" who pretend to be Hotel customers in order to evaluate Hotel employees. (Def.'s Stat. at ¶ 20.) The "mystery shoppers" then write reports based on their observations, which they then provide to the Hotel. (*Id.* at ¶ 21.)

3

Communication Form, 08/2011; Mills Decl. at ¶ 11.) That same month, plaintiff also received a "Verbal Warning" for incorrectly processing a large gratuity on a customer's bill. Because of the severity of this offense, Ms. Mills recommended that plaintiff receive a "Final Written Warning." (Mills Dep. at 94.) However, after meeting with the Hotel Manager and Mr. Berwald, the plaintiff was given only a "Verbal Warning" because she had been "under a lot of stress due to a personal family matter. . . ." (Def.'s App. Tab 13—Dep. of James Ryan ("Ryan Dep.") at 17.) In November 2011, plaintiff was issued a "Final Written Warning" after Hotel management received two unsolicited customer complaints regarding unsatisfactory and unprofessional service by the plaintiff over a four-day period.[7] (Def.'s App. Tab 6—Personnel Communication Form, 11/2011; Mills Decl. at ¶ 13.) In each of these instances, the record reflects that plaintiff was provided an opportunity to explain her actions to management. (*See, e.g.*, Pl. Dep. at 85 (discussing the cash handling incident).) Ultimately, based on a review of plaintiff's active disciplinary record, as well as the complaints lodged by the high-profile client, Mr. Berwald and Ms. Mills decided to terminate plaintiff's employment on March 7, 2012. (Mills Decl. at ¶ 23.)

## ANALYSIS

I.         **STANDARD OF REVIEW**

   **A. Summary Judgment**

A motion for summary judgment is appropriate when the pleadings, the discovery, the disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[7] Plaintiff disputes the fact that the word "final" was written on the warning on the date it was provided to her. (*See* Pl.'s Response at 21.) Yet, the subject line on the second page of the Personnel Communication Form is clearly identified as "Addendum to Personnel Communication Form (final written warning)." (*See* Def.'s App. Tab 6—Personnel Communication Form, 11/2011.)

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute as to a material fact exists if a "reasonable jury could return a verdict for the non-moving party." *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1031 (D.C. Cir. 2007) (quoting *Anderson*, 477 U.S. at 248). A moving party is thus entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Waterhouse v. D.C.*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). When considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255. However, the non-moving party "may not rely merely on allegations or denials in its own pleading," *see* Fed. R. Civ. P. 56(c), but instead must offer specific facts showing that genuine issues exist for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### B. Sex Discrimination Claim Under the D.C. Human Rights Act

D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, prohibits "discriminat[ion] against any individual, with respect to . . . compensation, terms, conditions, or privileges of employment" based upon sex. The D.C. Circuit analyzes DCHRA sex discrimination claims under the same legal framework as Title VII. *See Carpenter v. Fed. Nat'l Mortgage Ass'n,* 165 F.3d 69, 72 (D.C.Cir.1999). In that context, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of . . . sex[?]" *Brady v. Office of the Sergeant at Arms,* 520 F.3d 490, 494

5

(D.C. Cir. 2008). In other words, the court must determine whether the "employee's evidence creates a material dispute on the ultimate issue of [discrimination] either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. Bernanke,* 557 F.3d 670, 679 (D.C. Cir. 2009) (citing *U.S. Postal Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

In order to answer this question, courts have traditionally examined unlawful discrimination claims under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, once an employer has proffered a legitimate, non-discriminatory reason for the adverse employment action, the *McDonnell Douglas* burden-shifting framework no longer applies, and the court must simply determine whether the plaintiff has produced "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [the employee's protected class]. . . ." *Brady,* 520 F.3d at 494 (D.C. Cir. 2008). In evaluating defendant's proffer, "the issue is not the correctness or desirability of [the] reasons offered, [but] whether the employer honestly believes in [the] reasons it offer[ed] . . ." *Fischbach v. D.C. Dep't of Corr's*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (internal citations and quotation marks omitted); *Carter v. Rubin*, 14 F. Supp. 2d 22, 44 (D.D.C. 1998) (the court is not a "super-personnel department that reexamines an [employer's] decision to terminate an employee") (internal citations omitted).[8]

---

[8] In her Opposition plaintiff invites this Court to adopt the Sixth Circuit's requirement that the defendant not only show that its proffered non-discriminatory reasons for taking an adverse action are honest, but also that they are "reasonably based on particularized facts." (*See* Opp. at 14.) The Court rejects this invitation. The D.C. Circuit recently has upheld the "honest belief" standard. *See, e.g.*, *Gilbert v. Napolitano*, 670 F.3d 258, 264 (D.C. Cir. 2012); *Vatel v. Alliance of Auto Mfrs.*, 627 F.3d 1245, 1247-48 (D.C. Cir. 2011). Moreover, even under this heightened standard, plaintiff would not survive summary judgment.

## II. LEGITIMATE NON-DISCRIMINATORY REASONS FOR DEFENDANT'S ADVERSE EMPLOYMENT ACTION

In assessing an unlawful discrimination claim, the Court must first determine whether defendant has articulated a legitimate, non-discriminatory reason for undertaking the adverse employment action. *See Brady*, 520 F.3d at 493-95; *Fischbach*, 86 F.3d at 1183. In this regard, defendant argues that it terminated plaintiff's employment not out of discriminatory animus, but rather because she had a well-document history of unprofessional and unsatisfactory customer service despite escalating disciplinary actions taken by the Hotel. In support of this contention, defendant specifically relies on the four "active" disciplinary actions reviewed by Mr. Berwald and Ms. Mills during plaintiff's suspension:

(1) the August 2011 "Verbal Warning" (reduced from a "Final Written Warning") for failure to calculate correctly the gratuity owed on a customer's bill,

(2) the August 2011 "Second Written Warning" for failure to provide appropriate customer service during an evaluation by a "mystery shopper",

(3) the November 2011 "Final Written Warning" resulting from two unsolicited customer complaints made over the course of a four-day period; and,

(4) the February 2012 "Suspension" resulting from complaints made by a high-profile Hotel group.

Though plaintiff's disciplinary record is clear, she attempts to challenge the existence of a legitimate, non-discriminatory justification for her termination by arguing that the facts surrounding each alleged infraction are "of questionable provenance." (*See* Opp. at 12-14.) Specifically, she argues that she does not remember several of the underlying events which caused the Hotel to take disciplinary action and that, in those cases that she does remember the Hotel failed to offer her a sufficient opportunity to explain herself. (*Id.*)

Yet, in so arguing plaintiff misconstrues the relevant inquiry for the Court. As the D.C. Circuit has explained, "the question is not whether the underlying [] incident[s] occurred; rather the issue is whether *the employer honestly and reasonably believed* that the underlying [] incident[s] occurred." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008) (emphasis in original); *see also Waterhouse v. D.C.*, 298 F.3d at 995 ("At best, her responses constituted an argument that, notwithstanding those failings, the District should not have terminated her because there were extenuating circumstances . . . But courts are without authority to second-guess an employer's personnel decision absent demonstrably discriminatory motive.") (internal citations and quotation marks omitted). In *Brady*, for example, an employee of the Office of the Sergeant at Arms was demoted after his co-workers alleged that he had sexually harassed them. 520 F.3d at 492. He sued arguing that the sexual harassment allegations were false and a mere pretext for demoting him based on his race. *Id.* The Court granted summary judgment for defendant on the grounds that plaintiff had failed to present "evidence sufficient to show that [his employer's] conclusion was dishonest or unreasonable" not just that the underlying events did not occur. *Id.* at 495.

Similarly here, plaintiff's arguments amount to little more than a proffer that the various incidents for which she was disciplined did not occur, or at least that they did not occur as the third parties said they did. Under *Brady*, the truth or falsity of the underlying incidents is, however, of no consequence. The relevant question for the Court is simply whether the defendant has shown that it had an honest, reasonable belief that the underlying incidents occurred. The defendant is indeed able to meet its burden in this case. The record clearly demonstrates that the Hotel relied on statements made by trustworthy third parties (hotel guests

and a "mystery shopper") in choosing to discipline plaintiff.[9]  Moreover, though defendant was under no legal obligation to do so, the evidence further reflects that plaintiff was offered several opportunities to dispute the statements of these third parties and explain her actions.  (*See, e.g.*, Pl. Dep. at 85 (discussing the cash handling incident).)  In fact, on one such occasion, plaintiff was able to use this opportunity to convince Hotel management to reduce a "final written warning" to a "verbal warning" because of personal issues she was having at home. (*See* Ryan Dep. at 17.)

For these reasons, the Court concludes that defendant has offered a legitimate, non-discriminatory reason for terminating plaintiff's employment.  Accordingly, to withstand summary judgment plaintiff now must demonstrate a material dispute as to whether this non-discriminatory reason was pretextual.  *See Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 143 (2000); *Brady,* 520 F.3d at 495.

## III. PRETEXT

In order to withstand summary judgment, plaintiff must demonstrate that a reasonable jury could conclude "by a preponderance of the evidence that the legitimate reason[ ] offered by the defendant [was] not its true reason[ ], but [was] a pretext for discrimination." *Burdine,* 450 U.S. 248, 253 (1981); *see also Fischbach,* 86 F.3d at 1183.  In other words, plaintiff must offer sufficient evidence to show that her employer's explanation was "false, that is a lie, or that the

---

[9] Plaintiff argues that defendant relies on inadmissible hearsay in reaching this conclusion.  However, it is clear that so long as evidence is "capable of being converted into admissible evidence" at trial, the Court may consider the evidence on defendant's motion for summary judgment. *See Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).  Because the Hotel would be able to call to the stand all of the third parties who made allegations against plaintiff, the Court may consider them now on defendant's motion for summary judgment.  Moreover, the complaints are important not necessarily for the truth of their contents, but for the fact that within a short time frame, third parties filed complaints about the plaintiff with the Hotel, and there is no basis for suggesting that this did not happen or that the defendant acted improperly by relying on the customer complaints.

9

employer's real motivation was discriminatory." *Aka v. Washington Hosp. Cent.,* 156 F.3d 1284, 1289 n.3 (D.C. Cir. 1998). "It is not enough for the plaintiff to show that a reason given for a[n adverse] action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." *Fischbach* 86 F.3d at 1183 (citing *Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)); *see also Oates v. D.C.,* 824 F.2d 87, 93 (D.C. Cir. 1987) ("an ill-informed motivation" is insufficient); *Marcelus v. CCA of Tenn., Inc.*, 691 F. Supp. 2d 1, 6 (D.D.C. 2010) (An employer is not "liable for simply . . . arbitrary decisions . . . ." (internal citations and quotation marks omitted)).

Plaintiff need not, however, prove discriminatory animus through direct evidence. *See U.S. Postal Bd. of Governors v. Aikens*, 460 U.S. 711, 717 (1983). As the D.C. Circuit explained in *Brady*,

> plaintiff . . . may try in multiple ways to show that the employer's stated reason for the employment action was not the actual reason (in other words, was a pretext). Often, the employee attempts to produce evidence suggesting that the employer treated other employees of a different . . . sex . . . more favorably in the same factual circumstances . . . . Alternatively, the employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision.

520 F.3d at 495. Plaintiff attempts to satisfy this burden in two ways. First, she asserts that "she was treated differently from similarly situated employees who are not a part of her protected class." *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). Second, she asserts that the defendant failed to follow its own established disciplinary guidelines and this indicates pretext. *Cf. Blow v. City of San Antonio*, 236 F.3d 293 (5th Cir. 2001). Ultimately, as explained herein, because this Court finds that plaintiff has failed to establish a genuine issue of material fact on either ground, defendant's motion for summary judgment must be granted. *See Brady*, 520 F.3d at 495; *Evans v. Holder*, 618 F. Supp. 2d 1, 10-11 (D.D.C. 2009).

### A. Comparators

To permit a jury to determine that defendant took an adverse action based on discriminatory animus by comparing the employer's actions toward plaintiff and to other employees, plaintiff must first establish that these alleged comparators are sufficiently "similarly situated." *See Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). In this Circuit, that means that "all of the relevant aspects of her employment situation were 'nearly identical' to those of the male [employees]." *See Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir. 1994)). "To make this determination, courts look to, *inter alia*, whether the alleged comparators dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, 580 F. Supp. 2d 99, 109-10 (D.D.C. 2008) (internal citations and quotation marks omitted), *aff'd in relevant part and rev'd on other grounds*, 611 F.3d 1 (D.C. Cir. 2010).

#### 1. Mr. Juan Sanchez

Plaintiff first identifies Mr. Juan Sanchez as a potential comparator. Mr. Sanchez, like plaintiff, is a bartender at the Hotel's Round Robin Bar, having worked at the Hotel for about twenty-six years. (*See* Def.'s App. Tab 20—30(b)(6) Dep. of Kim Allen-Mills ("30(b)(6) Dep.") at 25-28.) Yet, unlike plaintiff, the Hotel did not receive a single guest complaint or negative mystery shopper evaluation about Mr. Sanchez. Mr. Sanchez was disciplined for his role in a single, albeit serious, incident. (*See* Def.'s App. Tab 22—Juan Sanchez's Personnel Communication Form, 06/2012.)

In March 2012, Mr. Sanchez served liquor to a 17-year old minor. (*Id.*) Though he allegedly asked to see the 17-year old's ID, he claimed that he misread it and was caught by the D.C Alcoholic Beverage Regulation Administration ("DCARBA"). (*Id.*) Though he took full responsibility for his alleged mistake, Mr. Sanchez put the Hotel at risk of losing its liquor license. He was therefore suspended immediately, while the Hotel investigated the incident. (*Id.*) During his three-month suspension, the DCABRA decided not to take away the Hotel's liquor license and instead issued the Hotel a warning letter. In light of the DCABRA's decision, Ms. Mills and Mr. Sanchez's other supervisors decided not to fire Mr. Sanchez for his mistake. (30(b)(6) Dep. at 25-26.) Instead, the Hotel reinstated him with a "Final Written Warning."

Plaintiff concedes that "Mr. Sanchez's problems were different from [her's]." (*See* Opp. at 16.) Yet, in her view, his actions were "clearly worse than anything [she] was accused of doing, but she received the ultimate penalty, termination, while he did not." (*Id.*) Her faults were "small things," whereas Mr. Sanchez put the Hotel's bottom line at risk. (*See id.* at 17) Therefore, plaintiff argues, a reasonable jury could conclude that defendant's non-discriminatory reasons for terminating her employment were a mere pretext for firing her based on her sex.

Yet, this argument mischaracterizes the legal standard for "similarly situated" employees in the discrimination context. Contrary to plaintiff's assertions, the analysis is not ends based. Two employees are not "similarly situated" merely because both of their actions had the potential to impact their employers' bottom-line. The Court instead must focus its inquiry on whether the employees "have [both] been subject to the *same standards* and have engaged *in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Childs-Pierce v. Util. Workers Union of Am.,* 383 F. Supp. 2d 60, 70 (D.D.C. 2005) *aff'd,* 187 F. App'x 1 (D.C. Cir. 2006) (emphasis

12

added) (internal citations and quotation marks omitted); *see also Prater v. FedEx Corp Serv. Inc.*, 2009 WL 1725978, *12 (D.D.C. 2009) ("[P]laintiff's attempt to compare an isolated mistake . . . with [p]laintiff's two year history of performance deficiencies . . . does not suffice."). Both the plaintiff and the comparator must have done substantially the same thing and yet received different punishments. Otherwise, a jury is unable to infer pretext from the employer's varied actions.

There is no question that plaintiff's offenses and the offenses of Mr. Sanchez are starkly different. Plaintiff concedes as much. (See Opp. at 16.) She was fired because of multiple disciplinary infractions related to poor customer service over a seven-month period. Mr. Sanchez, on the other hand, was suspended and almost terminated for serving alcohol to a minor and, in so doing, putting the Hotel's liquor license at risk. To be sure, these are both bad acts, but they are not comparable and the mitigating circumstances regarding Sanchez and his lack of any prior problems put him in a different situation than plaintiff was in. Therefore, it is inappropriate for the Court to permit a jury to consider Mr. Sanchez as a comparator for purposes of plaintiff's discrimination claim.

### 2. Mr. James "Jim" Hewes

Plaintiff next alleges that Mr. James Hewes is a "similarly situated" employee who was treated differently because of his sex. Like the plaintiff, Mr. Hewes had a number of customer service-related infractions which led to a series of disciplinary actions by the Hotel (albeit several years prior to plaintiff's infractions). In September 2007, Mr. Hewes was issued a "Written Warning" for using unprofessional language with a co-worker. (*See* Hewes Record.) In January and April 2008, while the 2007 incident was still "active" for purpose of the progressive disciplinary system, he received two unsatisfactory mystery shopper reviews for which he

received a "Second Written Warning" and a "Final Written Warning" respectively. (*Id.*) Then, in July 2010, though his prior infractions were no longer "active," he received a "Final Written Warning" and a three-day suspension for an unacceptable interaction with a hotel guest. Yet, despite these various disciplinary actions, Mr. Hewes was not fired.[10]

Though Mr. Hewes never had as many active disciplinary actions as plaintiff, there are certainly similarities between his disciplinary record and plaintiff's. But the key legal difference between them—and the main reason why he cannot be considered a comparator for plaintiff's pretext claim—is that Mr. Hewes and the plaintiff were disciplined by different supervisors. *See Evans*, 618 F. Supp. 2d at 13; *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 202 (D.D.C. 2007). Mr. Hewes was primarily dealt with and was disciplined by Ms. Alfa and Mr. Nalcaglu. (*See* Hewes Record.) Plaintiff, on the other hand, was primarily disciplined by Mr. Berwarld. Yet, in order to effectively compare the Hotel's actions toward them both, the supervisors taking those actions on behalf of the employer must have been the same.

Recognizing this difficulty with her case, plaintiff attempts to emphasize the role played by Ms. Mills as the Director of Human Resources in both her discipline and Mr. Hewes'. (*See* Opp. at 22-23.) However, this argument is also unconvincing. Not only did Ms. Mills play a relatively minor role in disciplining Mr. Hewes (if she played any role at all), but, moreover, she is a member of the same protected class as the plaintiff. Like other courts within this Circuit, this Court is skeptical that, absent some evidence to the contrary, a member of a protected class

---

[10] In addition to this disciplinary history, plaintiff also relies on the fact that Mr. Hewes met with Ms. Mills and other administrators in 2011 concerning his failure to craft a signature holiday drink. (*See* Mot. at 14-15 n. 8; Opp. at 22-23.) In plaintiff's view, the fact that Mr. Hewes *did not* receive any disciplinary actions in light of this meeting should be considered for purposes of her pretext claim. This meeting is of no consequence to the Court's analysis because (1) it occurred more than one year after Mr. Hewes' Final Written Warning, (2) it did not concern a customer complaint, and (3) plaintiff's supervisor, Mr. Berwald, played no role in the meeting.

discriminated against another member of that same class.  *See, e.g.*, *Horvath v. Thompson*, 329 F. Supp. 2d. 1, 5 (D.D.C. 2004).

**B.  Failure to Follow Established Disciplinary Procedures**

Though plaintiff's opposition brief focuses primarily on demonstrating that Mr. Sanchez and Mr. Hewes are comparators for purposes of inferring pretext, plaintiff also argues in passing that pretext might be established by defendant's failure to follow its own disciplinary procedures. (*See* Opp. at 12.)  While some courts have certainly recognized that a reasonable jury may draw such an inference, *see, e.g.*, *Blow v. San Antonio*, 236 F.3d 293 (5th Cir. 2001), the record simply does not reflect that such a departure took place in this case.  It is uncontested that the Hotel disciplined plaintiff several different times prior to terminating her employment.  In fact, unlike Mr. Sanchez and Mr. Hewes who were both suspended after a single incident in a twelve-month period, plaintiff was given the opportunity to work through the progressive disciplinary system step-by-step.  She received a Verbal Warning (reduced from a Written Warning), a Second Written Warning, and a Final Written Warning prior to being suspended and ultimately fired.  To be sure, defendant could have given plaintiff one last chance, but plaintiff has presented no evidence that the Hotel was required to do so by the terms of the Policy or the Hotel's general practice.

Ultimately, the Court finds that the record demonstrates that defendant had a legitimate, non-discriminatory reason for terminating plaintiff's employment.  Moreover, plaintiff has failed to establish a genuine issue of material fact as to whether this non-discriminatory reason was pretextual. Therefore, the Court must grant defendant's motion for summary judgment.

## CONCLUSION

Accordingly, and for the reasons stated above, the summary judgment motion will be granted. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: November 25, 2013